| | |
|---|---|
| | **UNITED STATES DISTRICT COURT** |
| | **EASTERN DISTRICT OF CALIFORNIA** |

| | |
|---|---|
| CHRISTOPHER I. SIMMONS, | Case No.: 1:07-cv-01058-DAD-SAB (PC) |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT DR. AKANNO'S MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| GRISSOM, et al., | |
| Defendants. | [ECF No. 179] |

Plaintiff Christopher I. Simmons is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant Dr. Akanno's motion for summary judgment, filed May 18, 2016.

I.

**RELEVANT HISTORY**

This action is proceeding against Defendants This action is proceeding against Defendants Grissom, Keiley and St. Lucia for deliberate indifference toward Plaintiff's "heat risk" condition, in violation of the Eighth Amendment, against Defendants Rients and Akanno for deliberate indifference

1

arising from the deprivation of Plaintiff's pain medication, in violation of the Eighth Amendment, and against Defendants Rients and Akanno for retaliation, in violation of the First Amendment.[1]

On May 18, 2016, Defendant Dr. Akanno filed a motion for summary judgment.[2,3] Plaintiff filed an opposition on August 31, 2016,[4] and Dr. Akanno filed a reply on September 15, 2016. Accordingly, pursuant to Local Rule 230(l), this motion is deemed submitted for review without oral argument.

## II.
## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

---

[1] Defendants Grissom, Keiley, Rients and St. Lucia are represented by the Deputy Attorney General Kelly Samson, and Defendant Dr. Akanno is represented by Janine K. Jeffery.

[2] Defendants Grissom, Keiley, Rients and St. Lucia filed a separate motion for summary judgment on April 18, 2016, which will be addressed by separate Findings and Recommendations.

[3] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion. Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).

[4] Because Plaintiff's opposition is verified, it is considered as an opposing affidavit for purposes of the summary judgment to the extent it is based on facts within Plaintiff's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint[5]

On July 28, 2006, Defendant Akanno violated Plaintiff's Eighth Amendment rights when he "denied the benefits of hot packs for PLAINTIFF's serious medical needs, and based that decision on

---

[5] This action is proceeding on Plaintiff's first amended complaint, filed February 17, 2012. (ECF No. 45.) The Court sets forth the factual allegations relating to Defendant Dr. Akanno only. Because Plaintiff's first amended complaint is verified it constitutes an opposing affidavit for purposes of ruling on a motion for summary judgment. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

3

PLAINTIFF not being granted an "extra privilege." (First Am. Compl. ¶ 20.)

On August 22, 2007, Defendant Akanno "conspired to cover-up the illegal actions of Sauceda when Defendant Akanno changed the medical order from every eight hours to BID or every 12 hours ... despite PLAINTIFF's specific requested action not to change the medical order as a reprisal, violating PLAINTIFF's 1st Amendment right." (Compl. ¶ 32.) Plaintiff filed a grievance regarding his medication. (Compl. ¶ 33.)

**B. Defendant's Statement of Undisputed Facts[6]**

1. At all relevant times to his claims, Plaintiff was incarcerated in Facility A at Kern Valley State Prison ("KVSP") in Delano, California. (Compl. ¶ 2, ECF No. 45; Jeffery Decl., ¶ 2, Ex. A, Dep. 20:11-21:20.)

2. Plaintiff claims he suffers from chronic severe debilitating pain due to congenital failure segmentation at C2-3 and his lumbar spine. (Compl. ¶ 27, ECF No. 45.)

3. Plaintiff admits that narcotics have effectively treated his chronic pain. (Compl. ¶ 27, ECF No. 45.)

4. On December 30, 2005, Dr. Akanno treated Plaintiff regarding his chronic care needs. During the visit, Plaintiff reported adhering to his pain regimen. At the conclusion of the exam, Dr. Akanno prescribed a 30 day prescription for Vicodin and continued Plaintiff's medications for his other conditions. (Akanno Decl., ¶ 4, Ex. A.)

5. On January 26, 2006, Dr. Akanno again treated Plaintiff. During the exam, Plaintiff requested a change in analgesics. Dr. Akanno prescribed a 30 day prescription for Hydrocodone. (Akanno Decl., ¶ 5, Ex. B.)

6. On February 9, 2006, Dr. Akanno examined Plaintiff. During this visit, Plaintiff reported having back pain due to his back surgery and specifically complained of discomfort when utilizing his lower back. Dr. Akanno adjusted the medication regimen by prescribing a daily double dose of Roxicet, a narcotic commonly used for moderate to severe pain. Dr. Akanno also discontinued the Vicodin. (Akanno Decl., ¶ 6, Ex. C.)

---

[6] Plaintiff filed a statement of undisputed facts setting forth sixteen undisputed facts. Defendant filed a response to each statement of fact and Defendant's objections are sustained because the statements are all either irrelevant and/or disputed.

4

7. On July 28, 2006, Plaintiff again met with Dr. Akanno. Plaintiff requested a medical order for a hot pot. Plaintiff claimed he needed the hot pot to make heat packs in his cell at night to help alleviate back pain. (Jeffery Decl., ¶ 2. Ex. A, Dep. 83:1-22, 85:2-20, 86:2-13; Compl. ¶¶ 48, 49, ECF No. 45.)

8. Plaintiff had the option of requesting a hot pot as one of the optional cell electrical appliances. (Akanno Decl., ¶ 10.)

9. Plaintiff claims that on July 10, 2007, LVS Sauceda reduced the frequency of his pain medication by removing the noon-time envelope causing him to suffer severe debilitating pain. (Compl. ¶¶ 30, 31.)

10. In July 2007, Plaintiff filed a staff complaint against LVN Sauceda for allegedly reducing his pain medications. (Compl. ¶ 31, ECF No. 45.)

11. Plaintiff claims that after he was interviewed on August 22, 2007, by employee J. Key regarding the staff complaint, that same day employee J. Key spoke to Dr. Akanno

12. Plaintiff claims that after he was interviewed on August 22, 2007, by employee J. Key regarding the staff complaint, that same day employee J. Key spoke to Dr. Akanno and caused Dr. Akanno to change a medical order to reduce the frequency of Plaintiff's medication to cover up Sauceda's acts. (Compl. ¶ 32; Jeffery Decl., ¶ 2, Ex. A, Dep. 78:11-19.)

13. On April 13, 2007, Dr. Akanno examined Plaintiff. During the visit, Plaintiff requested a prescription for Methadone for pain relief instead of Oxycodone he had been taking. Dr. Akanno honored the request and ordered Methadone to be taken twice a day. (Barnett Decl., ¶ 14, Ex. I.)

14. Methadone is generally effective in alleviating chronic pain. A common symptom associated with higher doses of Methadone treatment is constipation. (Barnett Decl., ¶ 14; Akanno Decl. ¶ 16.)

15. On June 25, 2007, Plaintiff complained of having "major problems" with constipation. (Barnett Decl., ¶ 14; Akanno Decl. ¶ 15, Ex. J.)

16. No licensed vocational nurse, including LVN Sauceda, has authority to order or change any aspect of prescription medications provided to Plaintiff. (Barnett Decl., ¶ 14.)

17. Plaintiff has no medical training. (Jeffrey Decl., ¶ 2, Ex. A, Dep. 77:3-4.)

18. Dr. Akanno believed that Plaintiff's pain could be effectively managed through medications. (Akanno Decl., ¶¶ 10-11 and 18.)

**C. Defendant's Objections to Plaintiff's Evidence Attached to Opposition**

Defendant raises several objections to Plaintiff's declaration and certain exhibits attached to his opposition. It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted. However, with regard to relevancy objections, given the Court's duty to determine whether there exists a genuine dispute as to any *material* fact, an independent objection to evidence as irrelevant is both unnecessary and unhelpful. See, e.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D. Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D. Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D. Cal. Sept. 21, 2009); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1119 (E.D. Cal. Jun. 5, 2006). Only the objections to exhibits and evidence that are relevant and need to be considered in resolving the instant motions will be addressed below.

**D. Findings on Defendant's Motion**

As previously stated, Plaintiff contends that Defendant Dr. Akanno was deliberately indifferent to his serious medical needs by denying him a medical order for a hot pot and by changing his pain medications. Plaintiff further contends that Dr. Akanno retaliated against him because he filed a grievance against LVN Sauceda.

1. Request for Judicial Notice

As an initial matter, Defendant requests that the Court take judicial notice of the fact that in 2004 Plaintiff was declared a vexatious litigant by the Monterey County Superior Court. (ECF No. 206-4, Ex. N.) Defendant requests that the Court assess Plaintiff's claims "with particular scrutiny to ensure that there is some evidence of a causal link between his claims and the evidence." (Reply, at 3 n.2, ECF No. 206.) Defendant's request for judicial notice should be denied because the determination that Plaintiff has been declared a vexatious litigant by a state court has no relevance to the instant action and motion for summary judgment addressed herein.

### 2. Deliberate Indifference to Serious Medical Need

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

#### a. Denial of Medical Order for a Hot Pot

It is undisputed that Plaintiff has had a back condition since 1995. (Jeffery Decl. ¶ 2, Ex. A, Dep. 80:2.) In 2005, Plaintiff underwent back surgery. (Akanno Decl., ¶ 3.) According to Plaintiff, he suffers from chronic severe debilitating pain due to congenital failure segmentation at C2-3 and his lumbar spine. (Compl. ¶ 27.) When left untreated, Plaintiff contends to experience a burning pain with tingling and numbness in his neck and shoulders, loss of strength, migraine headaches, and severe muscle spasms. He also claims to suffer from shooting pain down his legs, burning in the lower back region and back spasms. (Compl. ¶ 27.)

Dr. Akanno submits his declaration and medical records of Plaintiff which establish that between December 2005 and October 2006-the relevant time at issue here, Dr. Akanno treated Plaintiff on several different occasions. On December 30, 2005, Dr. Akanno met with and examined Plaintiff regarding his chronic care needs. During this visit, Plaintiff reported adhering to his pain regimen. After the examination, Dr. Akanno prescribed a 30 day prescription for Vicodin and continued Plaintiff's medications for his other conditions. (Akanno Decl. ¶ 4, Ex. A.) On January 26,

7

2006, Dr. Akanno examined Plaintiff and Plaintiff requested a change in analgesics. Dr. Akanno prescribed a 30 day prescription for Hydrocodone. (Akanno Decl. ¶ 5, Ex. B.) On February 9, 2006, Dr. Akanno examined Plaintiff again. During this visit, Plaintiff reported having back pain due to his back surgery and complained of discomfort when utilizing his lower back. Plaintiff rated his pain at a level seven on a scale of 1 through 10, and Dr. Akanno adjusted the medication regimen by prescribing a daily dose of Roxicet, a narcotic commonly used for moderate to severe pain. Dr. Akanno also discontinued the Vicodin. (Akanno Decl., ¶ 6, Ex. C.) On April 12, 2006, Plaintiff was again examined by Dr. Akanno. During the examination, Plaintiff told Dr. Akanno that he had occasional burning pains in his lower back and shooting pains down his leg. In response to these pain symptoms, Dr. Akanno added Neurontin (Gabapentin) to Plaintiff's pain treatment regimen. Neurontin is specifically effective for neuropathic pain. (Akanno Decl. ¶ 7; Ex. D.) On May 10, 2006, Dr. Akanno examined Plaintiff and Plaintiff complained of pains in his lower back and confirmed adhering to the previously prescribed medications of Roxicet and Neurontin. Dr. Akanno renewed these medications and increased the doses to three times a day for 90 days. (Akanno Decl. ¶ 8; Ex. E.)

On or about July 28, 2006, Plaintiff met with Dr. Akanno. During the visit, Plaintiff requested that Dr. Akanno issue a medical order for a hot pot. Plaintiff claimed that he needed the hot pot to make heat packs in his cell at night to help alleviate back pain until he received the next installment of medications in the morning. (Jeffery Decl., ¶ 2, Ex. A. Dep. 83:1-22, 85:12-20; 89:13-19.) Plaintiff further claimed that he wanted the hot pack because his cell area tended to get cold during the night causing an increase in pain. (Jeffery Decl., ¶ 2, Ex. A, Dep. 85:17-20.) Dr. Akanno denied the request because he did not believe that the hot packs were medically necessary and were not the treatment choice for Plaintiff's medical condition. (Akanno Decl., ¶¶ 10, 11.) Dr. Akanno advised Plaintiff that while there was no medical basis to authorize the heating device, Plaintiff could still choose the hot

pot as one of his optional electrical appliances.[7]  (Akanno Decl., ¶ 10, Ex. G; Jeffery Decl., ¶ 2, Ex. A, Dep. 83:1-18; 86:4-13.)

On September 13, 2006, Plaintiff was prescribed Hydrocodone/APAP. On October 17, 2006, Dr. Akanno examined Plaintiff and Plaintiff complained of pain. Dr. Akanno increased the dosage of Hydrocodone/APAP (acetaminophen), the medication Plaintiff had been prescribed by the other physician in September. (Akanno Decl., ¶ 12, Ex. H.)

Defendant submits evidence that heat wraps are not a medically accepted modality of treatment and would not have provided any kind of meaningful relief to Plaintiff. (Barnett Decl., ¶¶ 10-12; Akanno Decl. ¶¶ 10-11.) Dr. Barnett declares that "Title 15 [of the California Code of Regulations] section 3350(as) explicitly allows for medical services that are shown 'by outcome data to be effective.' The authoritative study by the Cochrane Collaboration published on January 25, 2006 found '[t]here is still not enough evidence' to recommend heat treatments for treatment of long term back pain and only moderate evidence in limited trials of any benefit for short term reduction of pain by heat wraps. Second, the permission for use of a hot pot in any cell room is not under medical control. Inmates can get permission for heating units in cells through custody. Physicians cannot generally order a device to heat water in a cell, and should not do so as a medical therapy unless the physician can articulate a clear medical need and benefit from boiling water in the cell." (Barnett Decl. ¶ 11.)

A mere difference of opinion between Plaintiff and Defendant regarding medical treatment or the need for a certain medical device does not give rise to a claim under section 1983. Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.

---

[7] CDCR policy provides that inmates are allowed to have two electronic devices/appliances in the cell. Plaintiff had the option to choose a hot pot as one of his optional appliances. (Akanno Decl., ¶ 10, Ex. G; Jeffery Decl., ¶ 2, Ex. A, Dep. 83:1-18; 86:4-13.)

9

Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88.

Defendant has met his burden of setting forth evidence demonstrating that the denial of a medical order for a hot pot was medically acceptable under the circumstances, which shifts the burden to Plaintiff to submit admissible evidence showing that the course of treatment chosen by Defendant was medically unacceptable and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has not done so.

As a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have issued a medical order for a hot pot, and that Defendant's failure to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. In opposition, Plaintiff contends that a physical therapist "recommended" the hot pack as a modality, and it was therefore medically necessary for him to have access to a hot pot to boil water to make heating packs in his cell. However, a mere "recommendation" for a certain modality is not sufficient proof that the particular treatment is medically necessary to treat a condition. Pursuant to Title 15 of the California Code of Regulations Section 3350, inmates are only entitled to those medical appliances which are medically necessary. Cal. Code. Regs., tit. 15, § 3350. In addition, the fact that a heating pad device is used during physical therapy sessions is insufficient to establish that the treatment is medically necessary. (Pl.'s Opp'n, ECF No. 201, Ex. E, at p.6.) (An undated order for physical therapy from Plaintiff's prior institution listing a number of modalities to be used during therapy sessions: "Modalities: Traction, Hot Packs, Ultrasound, TENS.") Furthermore, there is no indication that these records or the therapist's recommendation was made in response to an assessment of Plaintiff's condition as of 2006. Two of the physical therapy documents are not dated and the third is date stamped May 2007, one year after Dr. Akanno denied Plaintiff's July 2006 hot pot request. (Pl.'s Opp'n, Ex. E.)

Plaintiff further contends that he is entitled to the "hot pot" as an accommodation under the Armstrong Remedial Plan, citing to Armstrong v. Davis, 275 F.3d 849, 854 (9th Cir. 2001).[8] Plaintiff

---

[8] The Armstrong Remedial Plan refers to a remedial order issued in Armstrong v. Davis, No. CV 94-2307-CW, by the United States District Court for the Northern District of California to enjoin practices that discriminated against disabled inmates in California prisons. See Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001); Armstrong v. Wilson, 124 F.3d 1019

may pursue a claim for assistance under the Armstrong Plan "via the consent decree or through class counsel." Crayton v. Terhune, No. C 98-4386 CRB (PR), 2002 WL 31093590, *4 (N.D. Cal. Sept. 17, 2002). Plaintiff may not sue for damages and/or injunctive relief in this action on the basis that Defendant allegedly violated the Armstrong Remedial Plan as such relief must be pursued through the procedures provided by that plan. See Frost v. Symington, 197 F.3d 348, 358-59 (9th Cir. 1999); see also Clayton v. Terhune, 2002 WL 31093590, *4.

The fact that some physical therapists recommended a "hot pot" demonstrates only a difference of opinion between medical professionals, which is insufficient as a matter of law to establish deliberate indifference. See Snow, 681 F.3d at 987. As a result, Plaintiff's evidence does not create a triable issue of fact regarding whether Dr. Akanno was deliberately indifferent to Plaintiff's medical needs by denying a medical order for a hot pot. In light of the authoritative findings determining that the heat treatments do not successfully alleviate pain, there are insufficient facts to demonstrate that Dr. Akanno was deliberately indifference to Plaintiff's medical needs. Nor was Plaintiff placed at risk of any "objectively, sufficiently serious" harm by denying the request because Plaintiff was treated with other medications. (Compl. ¶ 27; Akanno Decl. ¶¶ 4-8, Exs. A-E.) Indeed, between December 2005 and October 2006 (and after), Dr. Akanno treated Plaintiff with narcotic pain medications to address Plaintiff's chronic pain and made necessary adjustments based on Plaintiff's complaints. (Akanno Decl. ¶¶ 4-8, Exs. A-E**.)** Plaintiff admits that narcotics effectively treated his chronic pain. (Compl. ¶ 27.) Furthermore, Dr. Akanno's ability to issue an order for use of a hot pot in a cell is severely restricted and is not subject to medical control. Although an inmate may obtain permission from custodial staff for use of heating appliances, physicians do not have the authority to order a heating device for the cell, and may not do so as a means of medical therapy unless a compelling medical need and benefit exists. (Akanno Decl. ¶ 11; Barnett Decl. ¶ 11.) Here, Defendant submits evidence that Plaintiff's medical condition did not warrant use of a hot pot and there was no medical justification for an order requiring him to boil water in his cell. (Barnett Decl., ¶¶ 9-12; Akanno Decl., ¶¶ 10-11.) In any event, Plaintiff was not prevented from requesting a hot pot as one of the optional

---

(9th Cir. 1997) (affirming order requiring submission of a remedial plan for CDCR's compliance with the Americans with Disabilities Act, 42 U.S.C. §§ 12131-34, as well as the Rehabilitation Act of 1973, 29 U.S.C. § 749.)

11

electrical appliances for use as an extra cell privilege. (Akanno Decl., ¶ 10.)

In sum, the record demonstrates that Plaintiff's request for a medical order to obtain a hot pot was not medically justified and was properly denied by Dr. Akanno. Plaintiff's mere disagreement with the course of treatment chosen by Defendant does not support a claim under the Eighth Amendment, and Defendant is entitled to summary judgment. Snow, 681 F.3d 987-88. Accordingly, Dr. Akanno is entitled to summary judgment on this claim.

### b. Change in Pain Medication

As previously stated, Plaintiff contends that Dr. Akanno was deliberately indifferent to Plaintiff's medical needs by changing his pain medications on August 22, 2007. Plaintiff specifically contends that Dr. Akanno reduced Plaintiff's pain medications to cover up Nurse Sauceda's acts of already reducing the dosage on July 10, 2007.

Plaintiff's medical records demonstrate that Dr. Akanno adjusted Plaintiff's pain regimen in response to his complaints of side effects, particularly constipation. As demonstrated above, Dr. Akanno examined Plaintiff, diagnosed his condition and offered treatments on December 30, 2005, January 26, 2006, February 9, 2006, April 12, 2006, May 10, 2006, and October 17, 2006. (Akanno Decl., ¶¶ 4-8, 13, Exs. A-E, H.)

On April 13, 2007, Dr. Akanno prescribed, at Plaintiff's request, a prescription for Methadone to be taken twice daily. (Barnett Decl., ¶ 13; Akanno Decl., ¶ 14, Ex. I.) Methadone is generally effective in alleviating chronic pain; however, a common symptom associated with higher doses of Methadone treatment is constipation. (Barnett Decl., ¶ 14; Akanno Decl., ¶ 16.) On June 25, 2007,[9] Plaintiff complained of having "major problems" with constipation. (Barnett Decl., ¶ 14; Akanno Decl., ¶ 15, Ex. J.) In response, Dr. Akanno reduced Plaintiff's Methadone intake to a single pill each night for ninety days thereafter. (Akanno Decl., ¶ 16, Ex. K.) Thus, the evidence presented by Defendant demonstrates that Plaintiff's medication was reduced in June 2007 to address Plaintiff's unpleasant side effects. While Plaintiff's Oxycodone prescription was reduced on August 22, 2017, from three times daily to twice daily, there is no evidence that it was done with "deliberate

---

[9] The note is incorrectly written as 6-26-06, when the visit actually occurred in 2007. (Akanno Decl., ¶ 16; Barnett Decl. ¶ 14.)

12

indifference," as Plaintiff was also receiving Methadone as part of his pain regime. Furthermore, Plaintiff's claim that Dr. Akanno intended to cause Plaintiff pain by reducing his medication is belied by the medical records which demonstrate that just two days later Dr. Akanno prescribed pain medications. On August 24, 2007, Dr. Akanno examined Plaintiff again and continued all of his medications, including Methadone and "strongly advised" Plaintiff to adhere to the medication schedule after he reported that he had abandoned his medications. (Akanno Decl., ¶ 16, Ex. L; Barnett Decl., ¶ 15.) Dr. Akanno saw Plaintiff again on October 2, 2007, and when Plaintiff indicated that he was no longer taking Methadone, Dr. Akanno prescribed Oxycodone three times daily. (Akanno Decl., ¶ 17; Ex. M.) On November 8, 2007, Dr. Akanno, at the request of Plaintiff, provided a referral to see a neurologist for back pain. (Jeffery Supp. Decl., ¶¶ 3-4, Exs. O, P.) In December 2007, Dr. Akanno filled out a Disability Placement Program Form (CDC 1845) confirming that Plaintiff was a full-time wheelchair user and noted Plaintiff should have a lower bunk. (Jeffery Supp. Decl., ¶ 5, Ex. Q.) Plaintiff is required to produce admissible evidence that the course of treatment prescribed by Defendant on August 22, 2017, was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff has failed to do so. While there were changes in Plaintiff's medications, nothing about the changes reflect "deliberate indifference" on the part of Defendant Dr. Akanno. At most, the changes reflect Plaintiff's disagreement with Dr. Akanno's decision to change his pain management regime. The fact that Plaintiff believes the prescribed course of treatment did not alleviate all of his pain does not demonstrate that Dr. Akanno was deliberately indifferent to his medical needs. Snow v. McDaniel, 681 F.3d at 987-88; Wilhelm v. Rotman, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Because Plaintiff was suffering constipation from high dosages of pain medications and was taking Methadone, the brief and limited reduction in Oxycodone from three times daily to twice daily does not demonstrate deliberate indifference. As stated by Dr. Barnett, "Dr. Akanno's caution in carefully prescribing narcotics and accommodations was appropriate and consistent with best practices. That Dr. Akanno did order substantial amounts of medication to treat Plaintiff's professed pain, along with appropriate accommodations is evidence of his compassion, not

indifference." (Barnett Decl. ¶ 16.) Accordingly, Defendant Dr. Akanno is entitled to summary judgment on this claim.

3. Retaliation

Plaintiff also alleges that Defendant Akanno withheld pain medication from Plaintiff in retaliation for filing a grievance against Nurse Sauceda regarding his medical treatment.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A retaliation claim in the prison context has five elements: (1) the plaintiff engaged in protected conduct, (2) the defendant took adverse action against the plaintiff, (3) there was a causal connection between the adverse action and the protected conduct, (4) the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities, and (5) the retaliatory action did not advance legitimate goals of the correctional institution. Id.

Because the reduction in medication reasonably advanced a legitimate penological goal and there is an insufficient causal connection between the adverse action and the protected conduct, Plaintiff's retaliation claim fails. In responding to Plaintiff's appeal, on August 22, 2017, Registered Nurse, J. Key stated:

> As per our interview conversation, your appeal has been denied. I spoke with Dr. Akanno this morning after reviewing your chart and it was decided by Dr. Akanno to change your medication to twice daily. If you feel that you need this medication more than the ordered dose, you may submit a 7362 and discuss this with your PCP.

(Pl. Opp'n, Ex. K.)

Dr. Akanno declares that he changed Plaintiff's pain medication on June 26, 2017, prior to the August 22, 2017, date in response to Plaintiff's claimed side effects. (Akanno Decl., ¶ 16.) Plaintiff's speculation that Dr. Akanno's decision was done in retaliation for filing a grievance is belied by Plaintiff's medical record both before and after August 22, 2017. A retaliation claim cannot rest on the logical fallacy of post hoc, ergo propter hoc, literally, "after this, therefore because of this." See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). As stated above, in 2005 and 2006 (and thereafter), Dr. Akanno examined and treated Plaintiff with narcotic pain medications to reduce

the pain, and frequently re-evaluated Plaintiff's pain management regime. More specifically, Dr. Akanno examined Plaintiff and provided treatment on December 30, 2005, January 26, 2006, February 9, 2006, April 12, 2006, May 10, 2006 and October 17, 2006. ((Akanno Decl., ¶¶ 4-8, 13, Exs. A-E, H.) In April 2007, Dr. Akanno prescribed Methadone and referred Plaintiff to physical therapy. (Akanno Decl., ¶ 14, Ex. I.) Then, on August 24, 2007-just two days *after* the alleged retaliatory action, Dr. Akanno examined Plaintiff again and continued all of his medications, including Methadone and "strongly advised" Plaintiff to adhere to the medication schedule after he reported that he had abandoned his medications. (Akanno Decl., ¶ 16, Ex. L; Barnett Decl., ¶ 15.) Dr. Akanno saw Plaintiff again on October 2, 2007, and when Plaintiff indicated that he was no longer taking Methadone, Dr. Akanno prescribed Oxycodone three times daily. (Akanno Decl., ¶ 17; Ex. M.) On November 8, 2007, Dr. Akanno, at the request of Plaintiff, provided a referral to see a neurologist for back pain. (Jeffery Supp. Decl., ¶¶ 3-4, Exs. O, P.) In December 2007, Dr. Akanno filled out a Disability Placement Program Form (CDC 1845) confirming that Plaintiff was a full-time wheelchair user and noted Plaintiff should have a lower bunk. (Jeffery Supp. Decl., ¶ 5, Ex. Q.) This evidence refutes Plaintiff's claim of retaliation, and Dr. Akanno's motion for summary judgment on this claim should be granted.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant Dr. Akanno's motion for summary judgment be granted in its entirety; and
2. The Clerk of Court be directed to enter judgment in favor of Defendant Dr. Akanno.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time

///
///

may result in the waiver of rights on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **May 19, 2017**

                                                      UNITED STATES MAGISTRATE JUDGE