# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER I. SIMMONS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GRISSOM, et al.,<br><br>　　　　　Defendants. | Case No.: 1:07-cv-01058-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS GRISSOM, KEILEY, RIENTS, AND ST. LUCIA'S MOTION FOR SUMMARY JUDGMENT<br><br>[ECF No. 172] |

Plaintiff Christopher I. Simmons is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendants Grissom, Keiley, Rients, and St. Lucia's motion for summary judgment, filed April 18, 2016.

**I.**

**RELEVANT HISTORY**

This action is proceeding against Defendants Grissom, Keiley and St. Lucia for deliberate indifference to a serious medical need in violation of the Eighth Amendment, and against Defendant Rients for retaliation in violation of the First Amendment.

1

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In resolving cross-motions for summary judgment, the Court must consider each party's evidence. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011). Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984 (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at this recommendation, the Court has carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses

thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

## III.

## DISCUSSION

### A. Summary of Plaintiff's Complaint[1]

**"Heat Risk" Allegations**

On June 24, 2006, Plaintiff filed a request "to provide adequate air circulation to prevent suffering a heat stroke." (Compl. ¶ 29.) Plaintiff contends that he was identified as a "heat risk" patient and required monitoring. (Compl. ¶ 29.) Plaintiff alleges that Defendants R. Grissom, P. Keiley, A. St. Lucia, and Doe Nurses 1-10 denied Plaintiff's requests for adequate air circulation, ice, cold showers and access to cold water which were necessary for Plaintiff's "heat risk." (Compl. ¶ 46.) Plaintiff also contends that Defendants Does #1-10 and Defendant St. Lucia failed to monitor the temperature for Plaintiff on July 20, 2006. (Compl. ¶ 29.) Plaintiff also contends that he was denied access to cold water or ice and was locked in his cell without air during a heat wave. (Compl. ¶ 29.)

**Pain Medication Allegations**

On July 28, 2006, Defendant Akanno violated Plaintiff's Eighth Amendment rights when he "denied the benefits of hot packs for PLAINTIFF's serious medical needs, and based that decision on PLAINTIFF not being granted an "extra privilege." (First Am. Compl. ¶ 20.)

On October 25, 2006, Defendant M. Rients "interfered with PLAINTIFF's prescribed medications for his severe debilitating pain, causing PLAINTIFF to unnecessarily suffer severe debilitating pain the entire night without pain medications. (Compl. 23.)

On August 22, 2007, Defendant Akanno "conspired to cover-up the illegal actions of Sauceda when Defendant Akanno changed the medical order from every eight hours to BID or every 12 hours ... despite PLAINTIFF's specific requested action not to change the medical order as a reprisal,

---

[1] This action is proceeding on Plaintiff's first amended complaint, filed February 17, 2012. (ECF No. 45.)

3

violating PLAINTIFF's 1st Amendment right." (Compl. ¶ 32.) Plaintiff filed a grievance regarding his medication. (Compl. ¶ 33.)

**Retaliation Allegations**

Plaintiff alleges that Defendant M. Rients violated Plaintiff's First Amendment rights by retaliating against Plaintiff by issuing Plaintiff a rule violation report ("RVR") after Plaintiff indicated that he was going to file a staff misconduct complaint. (Compl. ¶ 24.) Plaintiff also contends that Rients "rushed in PLAINTIFF's cell to forcibly take a paper envelop[e] PLAINTIFF had waiting for T. Ellstrom to return and PLAINTIFF could obtain her name not displayed as required by policy." (Compl. ¶ 24.)

**B.  Statement of Undisputed Facts[2]**

1. Plaintiff is prescribed medications that make him susceptible to heat. This susceptibility to heat has caused him to be identified as a "heat risk" inmate. (First Am. Compl., February 17, 2012, ECF No. 24, p. 9-10, ¶¶ 45-46; Samson Decl., ¶ 3 [Simmons Dep. 23:24-25; 24:1-15].)

2. At all times relevant to the claims in his complaint, Plaintiff was housed in A Facility, Building 1, Section B, in Cell 113, at Kern Valley State Prison (KVSP). (Samson Decl., ¶ 3 [Simmons Dep. 20:19-25; 21:1-20]; Grissom Decl., ¶ 4; Keiley Decl., ¶ 4; Hancock Decl., ¶ 6.)

3. On June 24, 2006, Plaintiff filed an emergency CDCR 602 administrative grievance, alleging that his cell was 105 degrees and that he was not receiving adequate air circulation, exposing him to the risk of heat stroke due to his "Heat Risk" status. Plaintiff requested that the ventilation problem be corrected and to be provided with ice.[3] (ECF No. 24, p. 6, ¶ 29; Samson Decl., ¶ 3 [Simmons Dep. 35:9-12]; Defs.' Ex. 1.)

4. By Plaintiff's own admission, he did not have a thermometer in his cell. (Samson Decl., ¶ 3 [Simmons Dep. 43:17-25; 44:1-6].)

---

[2] Plaintiff filed his own statement of undisputed facts, and Defendants filed a response thereto. Defendants object to all sixteen of Plaintiff's proposed undisputed facts on the grounds that it is not relevant or material to the present motion, or not supported by the evidence cited by Plaintiff. The Court has reviewed Plaintiff's proposed statement of undisputed facts and agrees with Defendants.

[3] Plaintiff's objection to the title of the grievance form is immaterial and is overruled.

4

5.       Because Plaintiff's administrative grievance concerned a request for maintenance repairs, the appeals office referred the appeal to Defendant Keiley, the KVSP Correctional Plant Manager II, and Defendant Grissom, the Associate of Business Services, to provide a response at the first level of review.  (Keiley Decl., ¶¶ 3, 5; Grissom Decl., ¶¶ 2-3, 5; Defs.' Ex. 1.)

6.       In response to Plaintiff's administrative grievance, Defendant Keiley, requested that the KVSP Chief Engineer, Defendant St. Lucia, investigate Plaintiff's allegations.  (Keiley Decl., ¶ 6; St. Lucia Decl., ¶¶ 1, 4.)

7.       Defendant St. Lucia interviewed Plaintiff on July 20, 2006, and measured the temperature in Plaintiff's cell.  (St. Lucia Decl., ¶ 5.)

8.       Defendant St. Lucia was not authorized to supply Plaintiff with ice or cold showers, but Defendant St. Lucia informed Plaintiff that he could make a request for ice or cold showers through custody staff.  (St. Lucia Decl., ¶¶ 8, 10; Defs.' Ex. 1.)

9.       Based on the investigation conducted by Defendant St. Lucia, Defendant Keiley denied Plaintiff's administrative grievance at the first level and Defendant Grissom approved the denial.  (Keiley Decl., ¶ 9; Grissom, Decl., ¶ 10.)

10.      In addition, KVSP has a Heat Plan that is required to be implemented when temperatures exceed a threshold that is safe for heat risk inmates.  (Hancock Decl., ¶¶ 4-5; Keiley Decl., ¶ 15; Defs.' Ex. 3.)

11.      Under the Heat Plan, Defendant Keiley, who was responsible for managing maintenance and plant operations, would not have been notified of any problems with ventilation or the cooling system unless the internal temperature of a housing unit reached 90 degrees to conduct priority work repairs.  (Keiley Decl., ¶ 14.)

12.       On October 26, 2006, a nurse came to Plaintiff's cell to pass out medications.  (Samson Decl., ¶ 3 [Simmons Dep. 104:7-8].)

13.       During that nurse's first medication pass at Plaintiff's cell, Plaintiff advised the nurse that he was missing one of his medications and, in response, she informed him that she would bring the medication back at the last medication pass.  (Samson Decl., ¶ 3 [Simmons Dep. 104:1-17].)

14. However, during the last medication pass, Plaintiff advised the nurse that he did not receive his pain medication. (Samson Decl., ¶ 3 [Simmons Dep. 104:18-21].)

15. Officer Rients overheard the nurse respond to Plaintiff and inform him that he had received all required medications and asked for her medication envelope to be returned. (Rients Decl., ¶ 4.)

16. Plaintiff, however, refused to return the medication envelope and stated that he wanted his medication. (Rients Decl., ¶ 5; Samson Decl., ¶ 3 [Simmons Dep. 106:15-21].)

17. Officer Rients issued Plaintiff a rules violation report for delaying a peace officer. (Rients Decl., ¶ 11; Defs.' Ex. 4.)

18. Nursing licensure laws require nurses who fill the medication envelope to also dispense the medication to the patient. (Ranson Decl., ¶ 11.)

19. Therefore, the nurse who conducted the medication pass in the housing unit would have known what medications were present in the envelope provided to the Plaintiff. (Ranson Decl., ¶ 12.)

20. Also, the nurse who administered Plaintiff's medications at 1800 hours would have been working the same shift as the nurse who administered medications at 2000 hours. (Ranson Decl., ¶ 10.)

21. Thus, that same nurse would have been aware of which medications Plaintiff still required at 2000 hours, and which medications had already been dispensed. (Ranson Decl., ¶ 10.)

### C. Defendants' Objections to Plaintiff's Evidence Attached to Opposition

Defendants raise several objections to Plaintiff's declaration and certain exhibits attached to his opposition. It is not the practice of the Court to rule on evidentiary matters individually in the context of summary judgment, unless otherwise noted. Only the objections to exhibits that are relevant and need to be considered in resolving the instant motions will be addressed below.

### D. Findings on Defendants' Motion

Plaintiff raises claims under Section 1983 for violation of the Eighth Amendment's prohibition against cruel and unusual punishments. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an

1  Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal
2  civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference
3  in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296
4  F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the
5  Eighth Amendment for denying humane conditions of confinement within a prison, the official must
6  know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take
7  reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

8  To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must
9  show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could
10 result in further significant injury or the unnecessary and wanton infliction of pain, and (2) a
11 deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).
12 The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a
13 prisoner's pain or possible medical need and (b) harm caused by the indifference. Id.

14 It is axiomatic that a prison official's failure to provide inmates relief from extreme
15 temperatures may constitute an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 304
16 (1991) ("low cell temperature at night combined with a failure to issue blankets" could constitute an
17 Eighth Amendment violation); Graves v. Arpaio, 623 F.3d 1043, 1049 (9th Cir. 2010) ("The district
18 court did not err … in concluding that dangerously high temperatures that pose a significant risk to
19 detainee health violate the Eighth Amendment."); Chandler v. Crosby, 379 F.3d 1278, 1294 (11th Cir.
20 2004) ("[T]he Eighth Amendment applies to prisoner claims of inadequate cooling and ventilation.").
21 The Ninth Circuit has recognized that the "Eighth Amendment guarantees adequate heating" but not
22 necessarily a "comfortable" temperature. Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996). One
23 measure of an inadequate, as opposed to merely uncomfortable, temperature is that it poses "a
24 substantial risk of serious harm." Farmer, 511 U.S. at 834.

25  1.  Heat Temperatures Within KVSP Between June and July

26 As previously stated, Plaintiff contends that the temperature in his cell was 105 degrees
27 Fahrenheit during June and July 2016. As a result, Plaintiff contends that he was exposed to the risk
28 of heat stroke due to his heat risk status. It is undisputed that Plaintiff is prescribed medications that

make him susceptible to heat. This susceptibility to heat has caused him to be identified as a "heat risk" inmate. (First Am. Compl., February 17, 2012, ECF No. 24, p. 9-10, ¶¶ 45-46; Samson Decl., ¶ 3 [Simmons Dep. 23:24-25; 24:1-15].)

Defendants submit evidence that KVSP has a Heat Plan that is implemented when temperatures exceed a threshold that is safe for high risk inmates. (Hancock Decl., ¶¶ 4-5; Keiley Decl., ¶ 15; Defs.' Ex. 3.) The KVSP Heat Plan program requires staff to document the temperatures within the housing units at the highest tier an inmate on the heat-risk list is housed, every three hours, seven days a week. (Defs.' Ex. 3.) Defendants submit the records from the months of June and July 2006 which demonstrate that the temperature did not reach or exceed 90 degrees Fahrenheit in Plaintiff's housing unit. (Hancock Decl., ¶ 7; Keiley Decl. ¶ 16, Defs.' Ex. 2.) In opposition, Plaintiff contends that Defendants have provided inaccurate temperature measures and provided "doctored" results which failed to take any temperature measurements at the peak of the day's heat. (Pl. Opp'n at 5, 12.) However, there is no evidence, beyond Plaintiff's mere speculation, that the records are not authenticate. Indeed, Defendants submit the declaration of B. Hancock, Litigation Coordinator, at KVSP, who is also the Heat Plan Coordinator and maintains the Heat Plan documents in the Institutional Heat Plan files in the ordinary course of business. (Hancock Decl., ¶¶ 1-2.) Hancock declares the following:

> The purpose of the KVSP Heat Plan is to identify and protect inmates who are, or who may be, susceptible to heat related illness by providing measures of identification and prevention.
>
> The KVSP Heat Plan was implemented to meet the requirements ordered by the Court in *Coleman v. Wilson*, Court No. CIV-S-90-0520-LKK-JFM, United States District Court, Eastern District of California.
>
> The Heat Plan provides specific procedures to monitor and record temperature (inside and outside) annually, May 1 through October 31, and it establishes a system to alert staff and inmates of alternatives necessary, in the event the Institutional Heat Plan is implemented, to prevent the onset of heat related pathologies. Attached as Defendants' Exhibit 3 is a copy of the 2006 KVSP Heat Plan.
>
> Attached as Defendants' Exhibit 2 are the Internal Temperature Record Logs for Facility A, Building 1, Section B, the housing unit where Plaintiff Christopher Simmons (P-25328) was housed, for June and July 2006.

> During June and July 2006, the Inside Temperature did not reach or exceed 90 degrees Fahrenheit in Plaintiff's housing unit. As a result, Stage II of the Heat Plan was not activated. Stage II of the Heat Plan would have required that cooling measures be implemented by housing staff, including iced liquids, access to showers or spray bottles for misting, and fans.
>
> Stage I of the Heat Plan only concerns outside temperatures readings, and is implemented when outside temperatures reach 90 degrees Fahrenheit. However, Stage I requires staff to alert and move heat risk inmates indoors, but it does not require implementation of cooling measures, such as iced liquids, access to showers or spray bottles, and fans.

(Hancock Decl., ¶¶ 3-9.) There is insufficient evidence to support Plaintiff's bare contention that the internal temperature record logs for the facility where Plaintiff was housed in June and July 2006, were falsified.

Plaintiff contends that he notified prison officials of the evaporative cooling system failure on June 24, 2006; however, despite the emergency nature of the appeal, prison officials did not respond until a month later on July 20, 2006. However, the internal temperature record logs for June and July 2006 demonstrate that the internal temperature in Plaintiff's housing unit did not exceed 90 degrees Fahrenheit. (Hancock Decl., ¶ 7; Keiley Decl., ¶ 16; Defs.' Ex. 2.) Furthermore, Defendant St. Lucia, Chief Engineer at KVSP, declares, in pertinent part:

> Under the direction of the Correctional Plant Manager II, I was responsible for supervising the daily operation of the KVSP engineering section.
>
> In that capacity, I plan, assign, and supervise the work on staff in performing, maintenance, and repairs for institution equipment and systems, including ventilation and air conditioning.
>
> I do not recall any complaints regarding alleged inadequacies in air flow delivered to Plaintiff's cell before I received Plaintiff's appeal, log no. KVSP-0-06-01537, and conducted an investigation.

(St. Lucia Decl., ¶¶2-4.) In addition, Defendant R. Grissom, Associate Warden of Business Services at KVSP, declares that the plant operations staff, including the engineers, routinely monitor the efficiency and output of the prison's cooling and ventilation systems and make adjustments as appropriate. (Grissom Decl., ¶ 13.) Plaintiff submits no evidence to contradict the declarations of St. Lucia and Grissom with regard to the adequacy of the ventilation air flow in June 2006.

Furthermore, after Defendants Grissom and Keiley received Plaintiff's administrative appeal alleging that his cell was 105 degrees Fahrenheit and did not have adequate air circulation, Defendant Keiley assigned Defendant St. Lucia to investigate. (Keiley Decl., ¶ 6; St. Lucia Decl., ¶¶ 1, 4.) Defendant St. Lucia declares that on July 20, 2006, he went to Plaintiff's cell, recorded Plaintiff's cell temperature to be at 74 degrees Fahrenheit, measured the air supply temperature at 67 degrees Fahrenheit, and ensured that the cooling systems were functioning normally. (St. Lucia Decl., ¶¶ 6-7.) St. Lucia further declares that had Plaintiff's cell required ventilation or cooling system repairs, he would have performed the repairs himself or instructed other KVSP maintenance staff to perform the repairs without delay. (Id. at ¶ 12.) To the extent Plaintiff requested ice or a cold shower from Defendant St. Lucia, he informed Plaintiff that he was not authorized to provide such items to Plaintiff and such request must be directed to custodial staff. (St. Lucia Decl. ¶¶ 8, 10; Defs.' Ex. 1.)

Plaintiff admits that he did not have a thermometer in his cell, but he now claims that he was able to read the temperature in the day room of his housing unit and that temperatures ranged between 82-84 degrees. (Pl.'s Decl., ¶ 20.) First, Plaintiff's argument lacks evidentiary foundation and support, as the allegation is based purely on Plaintiff's declaration. Second, even assuming the validity of Plaintiff's argument, temperatures ranging from 82-84 degrees would still not necessitate the implementation of the KVSP Heat Plan.

Plaintiff contends that on July 26, 2006, the temperature on day room thermometer read 95 degrees Fahrenheit. (Pl.'s Decl., ¶ 16.) However, such is based on a reading of a thermometer in control booth that Plaintiff admitted at his deposition was not working at the time relevant to this action. (Simmons Dep. at 44.) Thus, this factual contention lacks support and contradicts Plaintiff's deposition testimony. While the Court sympathizes with Plaintiff's claim that his housing unit felt hot during the summer months of June and July 2006, and Defendants acknowledge that the ventilation was repaired during the third week of July 2006, there is no evidence to support the contention that the temperatures exceeded 90 degrees Fahrenheit. Plaintiff's repeated arguments and evidence relating to the external temperature at KVSP in June and July 2006, is not relevant to the analysis here, of the internal temperatures within the KVSP facility. Accordingly, this evidence to the extent it may be considered is not relevant and does not create a genuine issue of material fact to defeat summary

judgment. While Defendants have acknowledged that the ventilation system was repaired in the third week of July 2006, there is no competent evidence that the temperatures in Plaintiff's cell reached or exceeded 90 degrees, notwithstanding the cooling and ventilation system, such that KVSP's Heat Plan program would have been implicated and appropriate measure taken.

Furthermore, Plaintiff may not attempt to defeat Defendants' motion for summary judgment by arguing that the Defendants acted improperly during discovery because there have been no meritorious motions to compel the alleged discovery and there has been no sanctions ruling in the course of discovery. See, e.g., Bank of America Nat'l Trust & Savings Ass'n v. Envases Venezolanos, S.A., 740 F.Supp. 260, 269 (S.D.N.Y.) ("Simple allegations of improper discovery tactics are not sufficient to defeat a summary judgment motion, particularly where the party making those allegations has failed to take advantage of the appropriate avenues of relief available under the Federal Rules of Civil Procedure."); citations.) Arguments or contentions set forth in a responding brief do not constitute evidence. See Coverdell v. Dep't of Soc. & Health Servs., 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence). Plaintiff must do more than attack the credibility of Defendants' evidence. See National Union Fire. Ins. Co. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert . . . judgment."). Accordingly, Defendants' motion for summary judgment should be denied.

2. Deliberate Indifference to Serious Medical Need-Defendant Rients

Plaintiff contends that on October 26, 2006, Defendant Rients interfered with his prescribed medications, causing him to suffer the entire night without pain medications.

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that

11

"the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

It is undisputed that on October 26, 2006, a nurse went to Plaintiff's cell to pass out medications. (Simmons Dep. at 104:7-8.) During the nurse's first medication pass at Plaintiff's cell, Plaintiff advised the nurse that he was missing one of his medication and, in response, she informed him that she would bring the medication back at the last medication pass. (Id. at 104:1-17.) However, during the last medication pass, Plaintiff advised the nurse that he did not receive his medication. (Id. at 104:18-21.) Officer Rients overheard the nurse respond to Plaintiff and inform him that he had received all required medications and asked for her medication envelope to be returned. (Rients Decl., ¶ 4.) Plaintiff, however, refused to return the medication envelope and stated that he wanted his medication. (Rients Decl., ¶ 5; Simmons Dep. at 106:15-21.) Officer Rients issued Plaintiff a rules violation report for delaying a peace officer. (Rients Decl., ¶ 11; Defs.' Ex. 4.) Nursing licensure laws require nurses who fill the medication envelope to also dispense the medication to the patient. (Ranson Decl., ¶ 11.) Therefore, the nurse who conducted the medication pass in the housing unit would have known what medications were present in the envelope provided to the Plaintiff. (Ranson Decl., ¶ 12.) Also, the nurse who administered Plaintiff's medications at 1800 hours would have been working the same shift as the nurse who administered medications at 2000 hours. (Ranson Decl., ¶ 10.)

There is no evidence to support Plaintiff's claim that Defendant officer Rients interfered with the administration of Plaintiff's pain medication on October 26, 2006. The mere failure of preventing Plaintiff from ascertaining the name of the nurse who dispensed the medications on October 26, 2006, is insufficient to demonstrate deliberate indifference on the part of Defendant officer Rients because at the time of the alleged interference by Rients, Plaintiff had already received any and all medication treatment he was going to receive that day. Defendant Rients declares that when the nurse indicated

12

that Plaintiff had received all medications he was supposed to receive, he believed that Plaintiff had been provided with all prescribed medications. (Rients Decl., ¶ 16.) P.K. Ranson declares, "[o]fficer Rients would not have had any knowledge of what medications Plaintiff had been dispensed or required, and it would have been reasonable to rely on the statements of the nurse conducting the medication pass when she indicated, as noted in the rules violation report, that the Plaintiff had already received all required medications." (Rients Decl., ¶ 13.) Here, the evidence in the record demonstrates that Defendant officer Rients reasonably relied on the nurse's medical determination that Plaintiff had received all the medication he was due that day.

Plaintiff acknowledges that he did not return the medical envelope in an attempt to have the nurse return for purposes of obtaining his/her name to file a complaint. The fact that Defendant officer Rients directed and obtained the medical envelope from Plaintiff does not demonstrate deliberate indifference to a serious medical need. There is no evidence that Defendant officer Rients made any decision, whatsoever, as to the administration of Plaintiff's pain medication on October 26, 2006, and the medical notes from that day demonstrate that nursing staff was to administer Atenolol, Oxycodone and Pregabalin on October 24, 2006. (Defs.' Ex. 5, at 14; see also Defs' Ex. 5 at 7-13.) The medical records indicate that on October 26, 2006, Plaintiff received all the prescribed medications, but even if he did not receive the pain medication on October 26, 2006, such action cannot be attributed to Defendant officer Rients. In his opposition, Plaintiff contends that officer Rients used excessive force in retrieving the medical envelope from him, such allegations exceed the scope of the operative complaint and Plaintiff is not proceeding on a claim of excessive force. Thus, nothing in the record suggests that Defendant officer Rients did anything other than his job in retrieving the medical envelope, after disbursement of all medication, to return to the nursing staff. Accordingly, Defendant Rients is entitled to summary judgment.

        3.      <u>Retaliation Claim-Defendant Rients</u>

Plaintiff contends that Defendant Rients gave Plaintiff a rules violation report after Plaintiff stated that he would file a staff misconduct complaint.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing

Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A retaliation claim in the prison context has five elements: (1) the plaintiff engaged in protected conduct, (2) the defendant took adverse action against the plaintiff, (3) there was a causal connection between the adverse action and the protected conduct, (4) the official's acts would chill or silence a person of ordinary firmness from future First Amendment activities, and (5) the retaliatory action did not advance legitimate goals of the correctional institution. Id.

In this case, there is no question that a reduction in pay constitutes an adverse action, see Brodheim, 584 F.3d at 1270 (the mere threat of harm can be sufficiently adverse to support a retaliation claim), or that engagement in filing prison grievances is protected conduct, Watison, 668 F.3d at 1114-15; Brodheim, 584 F.3d at 1269. The critical inquires in this case relate to 1) Defendant's motive in issuing Plaintiff a rules violation report, and 2) the existence of a legitimate correctional goal underlying the issuance of the rules violation report.

Plaintiff must show that his expression that he would file a staff complaint stemming from officer Rient's alleged interference with his medications was the substantial or motivating factor in Defendant's decision to issue Plaintiff a rules violation report for delaying a police officer in the performance of duty, Title 15 of the California Code of Regulations Section 3005. Brodheim, 584 F.3d 1262, 1271 (9th Cir. 2009) (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989)). In this Circuit, Plaintiff need "only put forth evidence of retaliatory motive that, taken in the light most favorable to him, presents a genuine issue of material fact as to" Defendant's motivation. Brodheim, 584 F.3d at 1271 (citing Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003)) (internal quotation marks omitted). This requires Plaintiff to offer either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence: (1) proximity in time between the protected conduct and the alleged retaliation, (2) expressed opposition to the conduct, or (3) other evidence that the reasons proffered by Defendant for the adverse action were false and pretextual. McCollum v. California Department of Corrections and Rehabilitation, 647 F.3d 870, 882 (9th Cir. 2011) (citing Allen v. Iranon, 283 F.3d 1070, 1077 (9th Cir. 2002)) (quotation marks omitted).

As just stated, Plaintiff contends that Defendant officer Rients issued him a rules violation report on October 26, 2006, because Plaintiff indicated that he would file a staff complaint stemming

from the alleged interference with his medications. Defendant Rients does not recall hearing Plaintiff indicate that he was going to "write him up," and declares that he had a legitimate correctional goal for issuing Plaintiff a rules violation report. (Rients Decl., ¶ 13.)

In issuing Plaintiff the rules violation report, Defendant officer Rients stated the following:

> On 10-26-06, at approximately 2110 hours, while I was assigned as A1-Floor#1, L.V.N. Alstrum was doing her medication pass. Inmate SIMMONS (P-25328,FAB1-113L) started to complain about not getting one of his medications. L.V.N Alstrum told inmate SIMMONS that he got the medications he was supposed to get and asked for her medication envelope back. Inmate SIMMONS said he wanted his medication and wouldn't give back the envelope. I told inmate SIMMONS I'm giving you a direct order to give the envelope back you are delaying the L.V.N.'s medication pass. Inmate SIMMONS said he wanted to talk to a Sgt. I told inmate SIMMONS he was going to program to see the Sgt. The L.V.N. continued her medication pass. When myself and C/O Robles went to take inmate SIMMONS to program he didn't want to go. I told inmate SIMMONS the only way you are not going to program is if you give the envelope back. Inmate SIMMONS gave the envelope back. I told inmate SIMMONS you will be receiving a CDCR-115 for delaying the medication pass and refusing a direct order. Inmate SIMMONS started to complain about getting the write up, I told him you slowed down her medication pass and delayed program for about (10) minutes while you argued with us. I still have to pick up mail and count and you delayed that. Inmate SIMMONS is aware of this report.

(Defs.' Ex. 4, at 1.) Plaintiff was found guilty of willfully delaying a peace officer. (Id. at 2.)

Plaintiff's explanations for his conduct and argument that the evidence does not support the rules violation report are not relevant to his claim of retaliation. In addition, Plaintiff's claim that Defendant Rients issued the rules violation report to cover up his alleged use of excessive force, and not because of the exercise of his First Amendment rights is beyond the scope of this action. The Court did not find that Plaintiff's first amended complaint stated a cognizable retaliation based on alleged excessive force by Defendant Rients. (ECF No. 47.) The Court's screening decision controls and a party may not amend claims by way of an opposition to a motion for summary judgment. See, e.g., Fossen v. Blue Cross and Blue Shield of Montana, Inc., 660 F.3d 1102, 1115 (9th Cir. 2011); Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1079-80 (9th Cir. 2008). In any event, Plaintiff's retaliation claim based on the exercise of his First Amendment rights fails on the merits. Plaintiff admittedly withheld the medical envelope, and Plaintiff's conduct provided justification for the issuance of the rules violation report for delaying a peace officer in performance of duty. The connection between the disciplinary measure taken against Plaintiff and his failure to comply with the

applicable rules is neither arbitrary nor irrational. Brodheim, 584 F.3d at 1272-73 (citing Shaw, 532 U.S. at 228) (quotation marks omitted). To the contrary, there was a valid, rational connection between actions taken against Plaintiff and the preservation of institutional safety and security allowing peace officers to perform their official duties. Id. Plaintiff has failed to submit any evidence to demonstrate that Defendant Rients acted with a retaliatory motive in issuing the rules violation report or that disciplinary action did not serve a legitimate penological interest. Accordingly, summary judgment should be granted as to Plaintiff's retaliation claim based on the issuance of the rules violation report.

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be granted; and
2. Judgment be entered in favor of Defendants

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 21, 2017**

UNITED STATES MAGISTRATE JUDGE